**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ERNEST C. SMALLWOOD, JR. and** | ) | |
| **EARTHA Y. SMALLWOOD,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:20-CV-02989-S-BH** |
| | ) | |
| **WILLOW WAY, LLC,** | ) | |
| **Defendant.** | ) | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court are *Smallwoods Motion to Dismiss*, filed October 5, 2020 (doc. 5), and

*Defendant Willow Way, LLC's Motion to Dismiss and for Sanctions*, filed December 14, 2020

(doc. 12).  Based upon the relevant findings and applicable law, the plaintiffs' motion to dismiss

should be **DENIED**, and the defendant's motions to dismiss and for sanctions should be

**GRANTED**.

## I.    BACKGROUND

This case involves a dispute over property located at 110 Natches Trace, Coppell, Texas

75019 (the Property). (doc. 1 at 30.)[2]  On August 31, 2020, Ernest C. Smallwood, Jr. and Eartha

Y. Smallwood (Plaintiffs) filed this *pro se* suit in state court against Willow Way, LLC

(Defendant), which was later removed to the Northern District of Texas. (*See id*. at 1, 27.)

On or about October 4, 2004, Plaintiffs executed a promissory note (Note) in favor of

Countrywide Home Loans, Inc. (Countrywide) in the amount of $460,800.00, secured through a

---

[1] By *Special Order 3-251*, this *pro se* case has been automatically referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

deed of trust (Deed of Trust), to purchase the Property. (*See id.* at 28.) The Deed of Trust named Mortgage Electronic Registration Systems, Inc. (MERS), and its successors and assignees, as the beneficiary and nominee for Countrywide. (*See id.*) It expressly granted MERS the right to transfer the interest in the Property and the right to enforce the Deed of Trust. (*See id.*) On April 4, 2008, Plaintiffs were sent a notice of acceleration, explaining that they were in default, they failed to cure the default, and the maturity date under the loan documents had been accelerated as a result. (*See id.*)

**A.    2008 Bankruptcy and 2009 Lawsuit**

On August 4, 2008, the day before a scheduled foreclosure sale, Mr. Smallwood filed for Chapter 13 bankruptcy. *See In re Ernest C. Smallwood, Jr.*, No. 08-33802-bjh13 (Bankr. N.D. Tex.) (2008 Bankruptcy) (doc. 1). The bankruptcy court dismissed the case with prejudice on October 14, 2008, concluding it "was not filed in good faith and was filed solely to delay his secured creditors." (*Id.*, doc. 45 at 3.) It noted that Plaintiffs had filed ten bankruptcies since 1989, and had "alternated filing separate bankruptcies to the detriment of their creditors." (*Id.*)

On January 5, 2009, Plaintiffs filed a civil suit in state court to enjoin the rescheduled foreclosure sale. *See Smallwood v. Countrywide Home Loans Inc.*, No. DC-09-00001 (134th Dist. Ct., Dallas County, Tex. Jan. 5, 2009). The case was dismissed without prejudice for want of prosecution on June 1, 2009. *See id.*

**B.    2011 Lawsuit**

In April 2011, MERS assigned the Deed of Trust to The Bank of New York Mellon FKA the Bank of New York, as Trustee for the Certificateholders, CWALT, Inc., Alternative Loan Trust 2004-33 Mortgage Pass-Through Certificates, Series 2004-33 (BONY). (doc. 1 at 54.)

2

On June 1, 2011, Plaintiffs filed another lawsuit in state court to enjoin the foreclosure sale scheduled for June 7, 2011, which was later removed to federal court. *See Smallwood v. Bank of America, et. al*, No. 3:11-CV-1283-D, 2011 WL 4544041 (N.D. Tex.) (2011 Lawsuit) (docs. 1, 1-4.). Plaintiffs alleged that they were not in default because their payments were refused or misapplied despite their efforts to correct errors, and that the documentation had been lost. (*Id.*, doc. 1-4 at 4-12.) They asserted causes of action for wrongful foreclosure, breach of contract, unreasonable collection efforts, and violations of the Texas Deceptive Trade Practices Act (TDTPA) and the Texas Debt Collection Practices Act (TDCPA); they requested declaratory relief, injunctive relief, specific performance, an accounting, monetary damages, and attorney's fees. (*Id.*)

On November 7, 2011, the defendants moved to dismiss all of Plaintiffs' claims. (*See id.*, doc. 52.) The district court found that Plaintiffs failed to state a claim but gave them an opportunity to amend. (*See id.*, doc. 62.) On February 1, 2012, Plaintiffs filed an amended complaint that re-asserted their claims for TDCPA violations and unreasonable collection efforts, and added new claims based on violations of a pooling and servicing agreement, the Texas Property Code, the Real Estate Settlement Procedures Act (RESPA), and the Housing and Urban Development Act of 1986 (HUD). (*See id.*, doc. 67.) On April 11, 2012, Plaintiffs moved for summary judgment on their claims, which was denied on May 9, 2012. (*Id.*, docs. 78, 84.) Plaintiffs then filed a motion to dismiss without prejudice. (*Id.*, doc. 89.) On July 31, 2012, the court granted Plaintiffs' motion and dismissed the action without prejudice. (*Id.*, doc. 91.)

## C.    2013 Lawsuit

On January 30, 2013, Plaintiffs filed a lawsuit in state court to enjoin the foreclosure sale scheduled for February 5, 2013. *See Smallwood v. Bank of Am., et. al.*, DC-13-01191 (193rd Dist. Ct., Dallas County, Tex. Jan. 30, 2013). The court denied Plaintiffs' request for temporary

restraining order on the same day. *Id.*  On May 3, 2013, the case was dismissed without prejudice after Plaintiffs failed to properly serve defendants. *See id.*

**D.**    **2015 Lawsuit and 2016 Bankruptcy**

On February 20, 2015, Plaintiffs filed a federal lawsuit against Bank of America, N.A. (BOA)[3] and BONY to enjoin the foreclosure sale scheduled for March 3, 2015.  *See Smallwood v. Bank of Am. et. al.*, No. 3:15-CV-00601-M-BK (N.D. Tex.) (2015 Lawsuit) (doc. 3 at 2).  They alleged that the transfer of interest in the Property from MERS to BONY was invalid because the Note and Deed of Trust had never been assigned to MERS, and that the efforts to foreclose on the Property were illegal. (*Id.*, doc. 10 at 3-4.)  They requested quiet title in their favor, damages, declaratory relief, and an injunction to prevent the foreclosure. (*Id.* at 7-8.)

On July 17, 2015, BOA and BONY moved to dismiss Plaintiffs' claims. (*Id.*, doc. 19.)  On November 12, 2015, the court granted the motion and dismissed all claims with prejudice. (*Id.*, docs. 28, 30, 31.)  Plaintiffs appealed the judgment, which was subsequently affirmed. *See Smallwood v. Bank of Am. N.A., et. al.,* Case No. 16-10563, 670 F. App'x 333 (5th Cir. 2016) (per curiam).  The Fifth Circuit found that the contested assignment "was authorized by well-established Fifth Circuit law," and that "the quiet-title theory fails because the plaintiffs had no sound title, having made their last mortgage payment in 2007." *Id.*

On March 3, 2015, the Property was sold at a foreclosure sale and subsequently conveyed to BONY. (*See* doc. 1 at 29-30, 54.)

In May 2016, BONY sold its interest in the Property to Defendant by way of a Substitute Trustee's Deed. (*See* doc. 1 at 30, 55.)  When Plaintiffs failed to vacate, Defendant filed a forcible

---

[3] Plaintiffs alleged that BOA and Countrywide are the same entity. (*See* 2015 Lawsuit, doc. 3 at 3.)

detainer action in 2016, and obtained a judgment in its favor (2016 Forcible Detainer Action). (*Id.* at 30, 55-56.)  Plaintiffs did not appeal the judgment.

On December 14, 2016, Mr. Smallwood filed for Chapter 13 bankruptcy. *See In re Ernest C. Smallwood, Jr.*, No. 16-34783-HDH13 (Bankr. N.D. Tex.) (doc. 1).  On January 6, 2017, the bankruptcy court granted his request to dismiss the case without prejudice. (*Id.*, doc. 20.)

### E.   **2017 Lawsuit**

On January 13, 2017, Plaintiffs sued multiple defendants, including Defendant and BOA, in state court, and the lawsuit was later removed to federal court. *See Smallwood v. Willow Way, LLC*, *et al.,* No. 3:17-CV-0242-G-BN (N.D. Tex.) (2017 Lawsuit).  Plaintiffs asserted claims for violations of the statute of limitations, quiet title, negligent misrepresentation, intentional infliction of emotional distress (IIED), breach of contract, and unreasonable collection efforts. (*Id.*, doc. 1 at 37-45.)  They alleged that the foreclosure sale was invalid because foreclosure proceedings had not been initiated within four years of acceleration, and that the assignment from BOA to BONY and the subsequent assignment from BONY to Defendant were invalid. (*Id.*)

BOA and Defendant each moved to dismiss, arguing the claims against them were precluded by the 2015 Lawsuit and, alternatively, that Plaintiffs had failed to state a claim for relief. (*See id.*, docs. 8, 19.)  The court partially granted the motions, concluding that the claims for quiet title, negligent misrepresentation, and unreasonable collection efforts were barred by res judicata and dismissing them with prejudice, but finding that the remaining claims were not precluded by the 2015 Lawsuit. (*Id.*, docs. 42, 46, 60, 63.)  The court dismissed "without prejudice" the claims for breach of contract and IIED for failure to state a claim, and it allowed the claim for violations of the statute of limitations to proceed. (*Id.*)

In August 2018, BOA and Defendant each moved for summary judgment on Plaintiffs' remaining statute of limitations claim. (*See id.*, docs. 78, 81.)  On February 20, 2019, the court granted summary judgment in favor of Defendant and BOA and dismissed the claim with prejudice. (*Id.*, docs. 97, 98.)  Plaintiffs filed a motion for new trial, which was denied on March 22, 2019. (*Id.*, docs. 99, 103.)  They did not appeal.

**F.    2019 Lawsuit**

On July 8, 2019, Plaintiffs sued Defendant and BOA in state court, and the lawsuit was later removed to federal court. *See Smallwood v. Willow Way, LLC, et al.*, 3:19-CV-01708-B-BN (N.D. Tex.) (2019 Lawsuit).  They alleged that Defendant had filed an eviction action against them, but that the foreclosure of the Property and subsequent assignment of the Note and Deed of Trust to Defendant were invalid. (*Id.*, doc. 1 at 27-31.)  They also alleged that the defendants had failed to fulfill the terms of an extension of credit in violation of the Texas Constitution, and that they had failed to provide notice of transfer in violation of the RESPA. (*Id.* at 34-41.)  They asserted claims for breach of contract, IIED, and RESPA violations, and requested damages, a judgment declaring the Substitute Trustee's Deed void and unenforceable and the foreclosure sale void and invalid, and an injunction permanently enjoining the defendants from taking possession of the Property. (*Id.*)

On August 6, 2019, Defendant and BOA each filed motions to dismiss, arguing that Plaintiffs' claims were barred by res judicata based on the 2015 and 2017 Lawsuits. (*Id.*, docs. 7, 10.)  On December 20, 2019, the court granted the motions and dismissed with prejudice all the claims as barred by res judicata. (*Id.*, docs. 39-41.)  It also warned Plaintiffs that "future litigation asserting claims centered on [the Property]—whether filed in this Court, filed in state court and removed to this Court, or filed in another federal court and transferred to this Court—could subject

them to sanctions, including the Court imposing monetary sanctions and/or precluding them from making further filings without leave of Court." (*Id.*, doc. 41.)  Plaintiffs did not appeal.

On February 13, 2020, Defendant filed another forcible detainer action in Justice of the Peace Court, Precinct 3, Place 2 of Dallas County, Texas (2020 Forcible Detainer Action). (*See* doc. 1 at 42-44.)[4]  It obtained a judgment on March 5, 2020, granting it possession of the Property. (*Id.* at 45.)  On March 13, 2020, the parties entered into an agreement whereby Defendant agreed to delay execution of the writ of possession until May 1, 2020, in exchange for Plaintiffs' agreement to vacate the Property before May 1, 2020, waive all rights to appeal the eviction judgment, and not file any other lawsuit or take other action contesting Defendant's right of ownership and possession. (*Id.* at 63.)

When Plaintiffs failed to vacate the Property, Defendant requested and was issued a writ of possession on May 5, 2020, but execution of the writ was stayed based on federal and state eviction moratoriums due to COVID-19. (*Id.* at 45-46.)  On August 18, 2020, the justice of the peace court lifted the stay, effective September 1, 2020. (*Id.* at 45.)

## G.    Current Lawsuit

On August 31, 2020, the day before the eviction order became effective, Plaintiffs filed this *pro se* action in state court to stop the eviction. (doc. 1 at 27-35.)  They alleged that the assignment of the Note and Deed of Trust to BONY and subsequent conveyance of the Property to Defendant by way of the Substitute Trustee's Deed are invalid. (*Id.* at 29-30.)  They also claimed that Defendant violated sections 4023 and 4024 of The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), and the Texas Supreme Court's 24th Emergency Order Regarding the

---

[4] On February 28, 2020, Plaintiffs filed a motion for injunctive relief in the 2019 Lawsuit, requesting that the court intervene in the 2020 Forcible Detainer Action. (*See* 2019 Lawsuit, doc. 42.)  The district court denied the motion. (*Id.*, doc. 44.)

COVID-19 State of Disaster (Emergency Order 24) by failing to submit a CARES Act affidavit when it requested the writ of possession. (*Id.* at 31.) They sought damages, declaratory judgment that the Substitute Trustee's Deed was void and unenforceable and that the foreclosure sale was void and invalid, and a permanent injunction enjoining Defendant from exercising control, or attempting to take possession, of the Property. (*Id.* at 32-34.)

On September 28, 2020, Defendant answered, requesting sanctions and asserting counterclaims for malicious civil prosecution, declaratory judgment, breach of contract, and slander of title. (*Id.* at 49-52.) It removed the case to this court based on diversity jurisdiction the same day. (*See* doc. 1.)

On October 5, 2020, Plaintiffs moved to dismiss their claims without prejudice but continued to seek relief. (doc. 5.) Defendant opposed voluntary dismissal in a response filed on October 7, 2020; Plaintiffs replied on October 27, 2020. (*See* docs. 7, 10.) On December 14, 2020, Defendant moved to dismiss under Rule 12(b)(6) and for sanctions. (doc. 12.) Plaintiffs responded on January 5, 2021, and Defendant did not reply. (doc. 14.) Both motions are now ripe for recommendation.

## II.    PLAINTIFFS' MOTION TO DISMISS

Plaintiffs request voluntary dismissal on grounds that they cannot adequately prosecute or defend this case because of financial and medical issues. (*See* doc. 5.) Their request may be liberally construed as a motion to dismiss their claims without prejudice under Fed. R. Civ. P. 41(a)(2).

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that after a defendant serves either an answer or a motion for summary judgment, as in this case, and if it does not consent to voluntary dismissal, an action may be dismissed on the plaintiffs request only by court order on

terms it considers proper.  Fed. R. Civ. P. 41(a)(2); *In re FEMA Trailer Formaldahyde Products Liability*, 628 F.3d 157, 162 (5th Cir. 2010); *Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 509 (5th Cir. 2007); *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 320 (5th Cir. 2002).  If the defendant has filed a counterclaim, voluntary dismissal should generally be denied, unless the counterclaim can remain pending as an independent action. Fed. R. Civ. P. 41(a)(2).  Unless the order otherwise states, a dismissal under Rule 41(a)(2) is without prejudice. *Id.*

The decision whether an action should be dismissed under this rule is within the sound discretion of the court. *Schwarz v. Folloder*, 767 F.2d 125,129 (5th Cir. 1985) (citing *La-Tex Supply Co. v. Fruehauf Trailer Division*, 444 F.2d 1366, 1368 (5th Cir. 1971)).  Notwithstanding this discretion, voluntary dismissals "should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor*, 279 F.3d at 317 (citing *Manshack v. Southwestern Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990)).[5]  The primary consideration is whether the non-movant would be prejudiced or unfairly affected. *Id.* at 317-18.  "Absent such a showing or other 'evidence of abuse by the movant,' the motion should be granted." *United States ex rel. Vaughn v. United Biologics, L.L.C.*, 907 F.3d 187, 197 (5th Cir. 2018) (quoting *id.* at 317).  The Fifth Circuit recently clarified that "one of the reasons

---

[5] Courts have found legal prejudice, and denied voluntary dismissals, **Error! Main Document Only.**when the plaintiff moves to dismiss the case at a late stage of the proceedings after the parties have exerted significant time and effort, the plaintiff seeks to avoid an imminent adverse ruling, or if dismissal would cause the defendant to be stripped of an otherwise available defense if the case were to be re-filed. *See In re FEMA Trailer Formaldahyde Products Liab. Litig.*, 628 F.3d at 162-63 **Error! Main Document Only.**(affirming denial of voluntary dismissal and the finding of prejudice based on the size and scope of a multiparty ligation where dismissal without prejudice was requested after trial date had been set for six months, it would require the court to re-align the parties, the re-alignment would almost surely add a different group of subsidiary defendants, the defendants would not be spared the continuing costs of legal defense because other plaintiffs remained, their investment in trial preparation would be wasted, and the other plaintiffs would be disadvantaged); *United States ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325 (5th Cir. 2003) (affirming denial of voluntary dismissal and the finding of prejudice where the plaintiff sought dismissal nine months after suit was filed, the parties had filed responsive pleadings, motions to compel, motions for expedited hearing, motions to dismiss, motions for oral arguments, and a motion for rehearing, the plaintiff's case could be construed as having been substantially weakened when the United States declined to intervene, and counsel had been sanctioned by the district court for failure to participate in the discovery process).

a court may deny [ ] a request [for dismissal without prejudice] is bad faith on the plaintiff's part." *Dunster Live, LLC v. LoneStar Logos Mgmt. Co., LLC.*, 908 F.3d 948, 951 (5th Cir. 2018); *see also Manshack*, 915 F.2d at 174 ("The courts must carefully monitor Rule 41(a)(2) voluntary dismissals to insure that they do not engender abuse.").

The record in this case reflects the persistent prosecution of meritless claims and other manipulative tactics to delay foreclosure and eviction proceedings involving the Property. Even though this case is in its early stages, this is Plaintiff's seventh lawsuit concerning the Property, and the third against Defendant. In the prior lawsuits, Defendant has expended significant time and effort to defend against the same claims asserted here. Moreover, Plaintiffs' motion to dismiss asserts that they continue to have claims to the Property, despite the fact that all such claims had been dismissed with prejudice on res judicata grounds in two prior lawsuits, and it includes new allegations and a claim for the return of a refrigerator or $600.00. (*See* doc. 5 at 3, 5.) They also appear to be attempting the avoidance of an adverse ruling, as their voluntary dismissal was filed shortly after Defendant asserted counterclaims and moved for sanctions against them. (*See* doc. 1 at 49-52.) Based on this evidence of bad faith and abuse on the part of Plaintiffs, their motion to dismiss without prejudice should be denied. *See Elbaor*, 279 F.3d at 317-18; *see, e.g., Beasley v. Pers. Fin. Corp.*, 279 B.R. 523, 529 (S.D. Miss. 2002) (denying voluntary dismissal "without ruling on whether 'unconditional dismissal will cause the non-movant to suffer plain legal prejudice'" because plaintiff's manipulation of the judicial process to avoid paying his creditors and to increase the chances of a favorable ruling on a pending motion to remand were sufficient evidence of abuse) (quoting *id.* at 317); *Coastal Drilling Co., LLC v. Creel*, No. CV 17-188, 2017 WL 2377503, at *3 (E.D. La. June 1, 2017) (denying Rule 41(a)(2) motion based, in part, on plaintiff's delay tactics and gamesmanship throughout the litigation).

### III.    DEFENDANT'S MOTION TO DISMISS

Defendant moves under Rule 12(b)(6) to dismiss all of Plaintiffs' claims against it. (*See* doc. 12.)

### A.    <u>Rule 12(b)(6) Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Regardless of whether the plaintiffs are proceeding *pro se* or are represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570*; accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise*, LLC, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f . . . matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must  be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003).  It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v.*

*Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Accordingly, documents falling in these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiffs attached to their petition a doctor's note advising against them moving, the district court's orders in the 2017 Lawsuit denying their motion for new trial and Defendant's motion to alter or amend judgment, the 2020 Forcible Detainer Action and judgment in favor of Defendant and the district court's order denying the temporary restraining order in the underlying state court action. (*See* doc. 1 at 37-47.) These documents are therefore considered part of the pleadings. *See Katrina Canal Breach es Litig*., 495 F.3d at 205.

Defendant attached to its motion to dismiss copies of Emergency Order 24; the magistrate's judge's findings, conclusions, and recommendations, the order accepting those findings, conclusions, and recommendations, and the judgment from the 2019 Lawsuit; and the parties' agreement following the 2020 Forcible Detainer Lawsuit, which was filed of record in that case. (*See* doc. 12 at 11-33.) These documents can be judicially noticed because they are matters of public record and their contents cannot reasonably be disputed. *See Norris*, 500 F.3d at 461 n.9; *Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of ... deeds and assignments"); *see also Wang v. Prudential Ins. Co. of America*., 439 F. App'x 359, 363 (5th Cir. 2011) (holding that the district court "did not impermissibly consider documents outside of the record in deciding the motion to dismiss, as the documents referred to were public court filings"); Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when it "can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed"). Accordingly, it is unnecessary to convert Defendant's motion to dismiss into a motion for summary judgment.

B.    **Failure to State a Claim**

Defendant first argues that Plaintiffs failed to state a claim for relief for violations of the CARES Act and Emergency Order 24. (*See* doc. 12 at 2-4.)

On March 27, 2020, the CARES Act was signed into law.  *See* Pub. L. No. 116-136, 134 Stat. 281 (2020).  Among other things, it provided protections for homeowners and renters, including a nationwide temporary moratorium on evictions involving certain properties. *See* 15 U.S.C. §§ 9057, 9058.  Section 4023 provides that a "multifamily borrower" that requests forbearance on a "Federally backed multifamily mortgage loan" due to the COVID-19 emergency may not, for the duration of the forbearance, "(1) evict or initiate the eviction of a tenant from a dwelling unit located in or on the applicable property solely for nonpayment of rent or other fees or charges; or (2) charge any late fees, penalties, or other charges to a tenant described in paragraph (1) for late payment of rent." *See* 15 U.S.C. § 9057(d).  Additionally, the multifamily borrower "(1) may not require a tenant to vacate a dwelling unit located in or on the applicable property before the date that is 30 days after the date on which the borrower provides the tenant with a notice to vacate; and (2) may not issue a notice to vacate under paragraph (1) until after the expiration of the forbearance." *See id.* § 9057(e).  A "multifamily borrower" is "a borrower of a residential mortgage loan that is secured by a lien against a property comprising 5 or more dwelling units." *Id.* § 9057(f)(3).  A "Federally backed multifamily mortgage loan" includes any loan that

> (A) is secured by a first or subordinate lien on residential multifamily real property designed principally for the occupancy of 5 or more families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property; and
>
> (B) is made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by any officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary of Housing and Urban Development or a housing or related program administered by any other such officer or agency, or is purchased or securitized by

the Federal Home Loan Mortgage Corporation or the Federal National Mortgage
Association.

*Id.* § 9057(f)(2).

Section 4024 prohibits landlords of a "covered dwelling" from filing eviction proceedings

against tenants for nonpayment of rent, fees, or charges during the 120-day period beginning on

March 27, 2020. *See* 15 U.S.C. § 9058(b)(1).  It also prohibits them from charging fees, penalties,

or other charges for such nonpayment. *Id.* § 9058(b)(2).  Additionally, a landlord may not issue a

notice to vacate until after the eviction moratorium has expired, and it may not require the tenant

to vacate within 30 days of receiving the notice to vacate. *Id.* § 9058(c).  A "covered dwelling"

includes property occupied by a tenant that either participates in a covered housing program or the

rural housing voucher program, or has a Federally backed mortgage loan or multifamily mortgage

loan. *See id.* § 9058(a)(1)-(2).  The eviction moratorium expired on July 24, 2020.

The Texas Supreme Court issued multiple orders that modified or suspended eviction

proceedings in response to the COVID-19 pandemic.  Emergency Order 24 provides, in relevant

part:

> 3. For residential eviction proceedings filed from March 27, 2020, through
> September 30, 2020, a sworn original, amended, or supplemental petition
> containing "a description of the facts and grounds for eviction" required by Texas
> Rule of Civil Procedure 510.3(a)(2) must state whether or not:
>
> > a. the premises is a "covered dwelling" subject to Section 4024 of the
> > CARES Act;
> >
> > b. the plaintiff is a "multifamily borrower" under forbearance subject to
> > Section 4023 of the CARES Act; and
> >
> > c. the plaintiff has provided the defendant with 30 days' notice to vacate
> > under Sections 4024(c) and 4023(e) of the CARES Act.
>
> 4. A judge continues to have the authority under Texas Rule of Civil Procedure
> 500.6 to develop the facts of the case, including whether or not the premises is a

"covered dwelling" and the plaintiff is a "multifamily borrower" under forbearance subject to Sections 4024 and 4023 of the CARES Act, respectively.

5. This Order is effective immediately and expires September 30, 2020, unless extended by the Chief Justice of the Supreme Court.

*See* Twenty-Fourth Emergency Order Regarding COVID-19 State of Disaster, 609 S.W.3d 132, 133 (Tex. 2020). Although the expiration date was extended in subsequent orders, the Texas Supreme Court did not extend this order when it expired on March 31, 2021. *See* Thirty-Fourth Emergency Order Regarding COVID-19 State of Disaster, No. 21-9011, 2021 WL 1031675, at *2 (Tex. Jan. 29, 2021).

Here, Plaintiffs generally allege that the 2020 Forcible Detainer Action violated sections 4023 and 4024 of the CARES Act and Emergency Order 24, and that Defendant did not file a CARES Act affidavit when it requested a writ of possession on May 6, 2020. (*See* doc. 1 at 31.) Plaintiffs do not allege any facts to support a reasonable inference that the Property is a "covered dwelling," or that Defendant is a "multifamily borrower" as defined under the CARES Act, however. *See* 15 U.S.C. §§ 9057, 9058. While they claim that Defendant violated Emergency Order 24 by failing to file a CARES Act affidavit, there are no allegations of what, if any, damages they sustained as a result.

Plaintiffs also allege that the rulings in the eviction action are not consistent with the requirements of Emergency Order 24. (*See* doc. 1 at 31.) To the extent they seek review of those rulings, the Court lacks jurisdiction under the *Rooker-Feldman* doctrine. *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 281-82 (2005) (explaining that the *Rooker-Feldman* doctrine divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *see also Weekly*

*v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar*, 18 F.3d 315, 317 (5th Cir. 1994)) ("'[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.'").

Plaintiffs' claims for violations of the CARES Act and Emergency Order 24 should be dismissed with prejudice for failure to state a claim.

## C.   <u>Res Judicata</u>

Defendant contends that Plaintiffs' claims against it are barred by "res judicata" or "claim preclusion" because the claims invoke the same nucleus of operative facts as the 2019 Lawsuit. (doc. 12 at 4-5.)

The "rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Comer v. Murphy Oil USA, Inc*., 718 F.3d 460, 466 (5th Cir. 2013); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'").  "True res judicata" or "claim preclusion . . . bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citation omitted). This doctrine has four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Comer*, 718 F.3d at 467 (quoting *id.*).

Res judicata is generally "an affirmative defense that should not be raised as part of a 12(b)(6) motion but should instead be addressed at summary judgment or at trial." *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc*., 115 F. App'x 662, 664 n.1 (5th Cir. 2004) (citing *Moch*

*v. East Baton Rouge Parish Sch. Bd.*, 548 F.2d 594, 596 n.3 (5th Cir. 1977) ("Generally, a party cannot base a 12(b)(6) motion on res judicata."). Nevertheless, "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)). As with all affirmative defenses, the burden of proving claim preclusion "rests on the party claiming the benefit of the doctrine." *Patterson v. Dean Morris, L.L.P.*, No. 08-5014, 2011 WL 1791235, at *6 (E.D. La. May 6, 2011) (citation omitted).

### 1. Identical Parties or Privity with Interested Parties

It is undisputed that Plaintiffs and Defendant were parties to the 2017 and 2019 Lawsuits, and that they are parties to the current suit. Defendant was not a party to the 2015 Lawsuit between Plaintiffs and BOA and BONY, but it can claim preclusion as a defense if it was in privity with identical parties to those prior suits. *See Test Masters*, 428 F.3d at 571; *see also Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992) ("A non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant.").

Privity is in essence a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266-67 (5th Cir. 1990). The Fifth Circuit "has held that privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Id.* "Identity of parties" requires that both parties to the current suit be parties to the prior suit or in privity with the parties to the prior suit. *Jones v. Sheehan, Young*

& Culp, P.C._, 82 F.3d 1334, 1341 (5th Cir. 1996) (citing _Coalition of Cities for Affordable Utility Rates v. Public Util. Comm'n,_ 798 S.W.2d 560, 563 (Tex. 1990)).[6]

Here, Plaintiffs allege that Countrywide (now BOA) was the original owner and beneficiary of the Note and Deed of Trust, that MERS attempted to assign the Note and Deed of Trust to BONY, and that the Property was subsequently sold to Defendant by way of Substitute Trustee's Deed. (_See_ doc. 1 at 30.)  They also do not dispute Defendants' claim that it purchased the Property from BONY in 2016. (_Id._ at 54-55.)  This relationship is sufficient to establish privity between BOA, BONY, and Defendant. _See Frank C Minrielle LLC v. Atl. Ref. Co._, 337 F. App'x 429, 435 (5th Cir. 2009) (per curiam) ("[N]onparty preclusion may be justified based on a ... pre-existing 'substantive legal relationship[ ]' between the [party and nonparty[ ...]" such as "preceding and succeeding owners of property ... and assignee and assignor") (citing _Taylor_, 553 U.S. at 893); _see also Butts v. JP Morgan Chase Bank_, No. 3-11-CV-2542-M, 2011 WL 7109344, at *2 (N.D. Tex. Dec. 28, 2011), _adopted by_ 2012 WL 258269 (N.D. Tex. Jan. 27, 2012) (finding that where the defendant in the second action was "the successor by merger" to the defendant in the first action, "[that] relationship [was] sufficient to establish privity").  The first element is satisfied based on identical parties as well as privity with an interested party.

---

[6] In _Taylor_, the Supreme Court "avoid[ed] using the term 'privity' " to "ward off confusion," but it identified six "exceptions" to "the rule against nonparty preclusion": (1) a person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement; (2) preclusion may be justified based on a variety of pre-existing "substantive legal relationships" between the person to be bound and a party to the judgment, such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor"; (3) a nonparty may be bound by a judgment where she was "adequately represented" by a party to the suit having the same interests as the nonparty, such as in "properly conducted class actions ... and suits brought by trustees, guardians, and other fiduciaries"; (4) preclusion is appropriate if the nonparty "assumed control" over the litigation in which the judgment was rendered; (5) "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy"; and (6) a "special statutory scheme" may sometimes "expressly foreclose successive litigation by nonlitigants," such as statutes governing "bankruptcy and probate proceedings." _Taylor_, 553 U.S. at 893-96.  Notably, the Supreme Court cautioned that this list was "meant only to provide a framework" for nonparty preclusion rather than "a definitive taxonomy." _Id._ at 893.

### 2. *Court of Competent Jurisdiction*

The 2015, 2017, and 2019 Lawsuits were dismissed by the Northern District of Texas. None of the parties disputes that it was a court of competent jurisdiction to determine the prior actions. The second element is also satisfied.

### 3. *Prior Final Judgment*

A prior final judgment on the merits was issued in the 2015 Lawsuit when the district court granted the motion to dismiss and dismissed all claims with prejudice. A prior final judgment was issued in the 2017 Lawsuit when the district court granted the motion to dismiss and dismissed the quiet title, negligent misrepresentation, and unreasonable collection efforts claims with prejudice as barred by res judicata. A prior final judgment on the merits was issued in the 2019 Lawsuit when the district court granted the motion to dismiss and dismissed all claims with prejudice as barred by res judicata. "Generally, a federal court's dismissal with prejudice is a final judgment on the merits for res judicata purposes." *Stevens v. Bank of America, N.A.*, 587 F. App'x 130, 133 (5th Cir. 2014) (citing *Oreck Direct, LLC v. Dyson, Inc*., 560 F.3d 398, 401 (5th Cir. 2009)). The third element has been met.

### 4. *Same Claims*

Defendant contends that the factual allegations and prayer asserted against it in the current lawsuit are "near carbon copies" of the 2019 Lawsuit, and that the claims asserted against it concerning the Property are barred by res judicata because they were "already entertained and denied" by the courts in the 2015, 2017, and 2019 Lawsuits. (*See* doc. 12 at 5.) Plaintiffs' response does not address this argument. (*See* doc. 14.)

Res judicata extends beyond claims that were actually raised in a prior action and bars all claims that "could have been advanced in support of the cause of action on the occasion of its

former adjudication . . . ." *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990).  Ultimately, the

"preclusive effect of [the] prior judgment extends to all rights the original plaintiff had 'with

respect to all or any part of the transaction, or series of connected transactions, out of which the

[original] action arose.'" *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395-96 (5th Cir. 2004)

(citation omitted).  "To determine whether two suits involve the same claim or cause of action,

[the Fifth Circuit] has adopted the transactional test of the Restatement (Second) of Judgments, §

24." *Id.*  Under this test, the "inquiry focuses on whether the two cases under consideration are

based on 'the same nucleus of operative facts.'" *United States v. Davenport*, 484 F.3d 321, 326

(5th Cir. 2007) (citations omitted).  "[I]t is the nucleus of operative facts, rather than the type of

relief requested, substantive theories advanced, or types of rights asserted, that defines the claim."

*Id.*  Identifying the nucleus of operative facts involves a "pragmatic" approach, "giving weight to

such considerations as whether the facts are related in time, space, origin, or motivation, whether

they form a convenient trial unit, and whether their treatment as a unit conforms to the parties'

expectations." *Test Masters*, 428 F.3d at 571 (citing Restatement (Second) of Judgments, § 24).

    In the 2015 and 2017 Lawsuits, Plaintiffs sued to quiet title to the Property, arguing that

the Note and Deed of Trust had never been assigned to MERS, so the subsequent transfer of interest

in the Property from MERS to BONY was invalid. (*See* 2015 Lawsuit, doc. 10 at 3-4; 2017

Lawsuit, doc. 1 at 37-45.)  The 2015 Lawsuit was dismissed under Rule 12(b)(6) for failure to state

a claim for relief. (*See* 2015 Lawsuit, docs. 28, 30, 31.)  Plaintiffs appealed that decision, and the

Fifth Circuit affirmed.  *See Smallwood,* 670 F. App'x 333.  In the 2017 Lawsuit, the court found

that Plaintiffs asserted claims that were based on the alleged illegitimacy of the Assignment and

which could have been brought in the 2015 Lawsuit, and it dismissed those claims with prejudice

as barred by res judicata. (*See* Lawsuit 2017, docs. 42, 46, 60, 63.)

In the 2019 Lawsuit, Plaintiffs sued BOA and Defendant, arguing that the foreclosure of the Property was illegal, and that the Note and Deed of Trust were not lawfully assigned to Defendant. (*See* 2019 Lawsuit, doc. 1 at 34-41.) They sought damages, a judgment declaring the Substitute Trustee's Deed void and unenforceable and the foreclosure sale void and invalid, and an injunction permanently enjoining the defendants from taking possession of the Property. (*Id.*) The court dismissed all of Plaintiffs' claims with prejudice, concluding that they were barred by res judicata because they were "identical" to prior claims and "emanate[d] from their attempt to find legal defects to prevent, delay, or contest the foreclosure of the Property and existed at the time the [2015 and 2017 Lawsuits] were filed." (*Id.*, doc. 39 at 11.)

Here, Plaintiffs again allege that the assignment of the Note and Deed of Trust to BONY was invalid. (*See* doc. 1 at 29-30.) As in the 2017 and 2019 Lawsuits, they also allege that the subsequent conveyance of the Property to Defendant by way of the Substitute Trustee's Deed was invalid. (*Id.* at 30.) As in the 2019 Lawsuit, they are seeking damages, declaratory judgment that the Substitute Trustee's Deed is void and unenforceable and that the foreclosure sale is void and invalid, and an injunction permanently enjoining Defendant from exercising control, or attempting to take possession, of the Property. (*Id.* at 32-34.)

The 2015 Lawsuit, 2017 Lawsuit, 2019 Lawsuit, and current lawsuit are all based upon the same nucleus of operative facts and revolve around Plaintiffs' belief that they have superior right to title of the Property. Their claims all arise from the same or series of connected transactions: (1) Plaintiffs obtaining a mortgage loan from Countrywide (now BOA) and executing a Note and Deed of Trust in its favor; (2) MERS's assignment of the Note and Deed of Trust to BONY; (3) the foreclosure of the Property; (4) Defendant's purchase of the Property via Substitute Trustee's Deed; and (5) Defendant's attempted possession of the Property. (*See* doc. 1 at 30-34.) Considered

together, all of Plaintiffs' claims are related in "motivation" and "origin" and form a "convenient trial unit," as they ultimately seek to retain possession and ownership of the Property due to their allegedly superior title interest. *See Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., Inc.*, 776 F.2d 1270, 1274 (5th Cir. 1985) ("[O]ne who has a choice of more than one remedy for a given wrong ... may not assert them serially, in successive actions, but must advance all at once on pain of bar.") (internal quotations omitted). The fourth element is therefore satisfied.

The elements of res judicata appear on the face of Plaintiffs' petition and in documents that are subject to judicial notice, so Defendant's affirmative defense may be considered under Rule 12(b)(6). *See Hall*, 305 F. App'x at 227-28; *see also Saint Paul Commodities, LLC v. Crystal Creek Cattle Co.*, No. 3:11-CV-0037-G, 2012 WL 3135574, at *3 n.3 (N.D. Tex. Aug. 1, 2012) (considering the res judicata defense in the motion to dismiss context because "all [the] relevant facts [were] in the record and [were] uncontroverted"). Because all the elements of claim preclusion are satisfied, Plaintiffs' remaining claims against the Defendant are barred and should be dismissed with prejudice. *See Butts v. JP Morgan Chase Bank*, No. 3:11-CV-2542-M, 2011 WL 7109344 at *2 (N.D. Tex. Dec. 28, 2011) (dismissing the plaintiff's claims as "barred by res judicata" because "both the instant action and the prior litigation [arose] out of the 'same nucleus of operative facts'—the mortgage loan obtained by [the] plaintiff on the subject property").

### IV.   OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567-68 (N.D. Tex. 2005) (citing *Great Plains Trust Co. v. Morgan Stanley Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed

pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims v. Tester*, No. CIV.A.3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008). However, "[w]hen a plaintiff is given an opportunity to amend a complaint that fails to state a claim upon which relief can be granted, but refuses to do so, then the district court is justified in dismissing the complaint with prejudice." *Rodriguez v. United States*, 66 F.3d 95, 98 (5th Cir. 1995). Additionally, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninge*r, 188 F.3d 322, 327 (5th Cir. 1999).

Here, all of Plaintiffs' claims in all four lawsuits are based upon the Assignment and their claim of superior title to the Property. Because those claims all fail as a matter of law and are barred by res judicata, they appear to have alleged their best case. Moreover, they also fail to state a claim for violations of the CARES Act and Emergency Order 24, and the moratorium on evictions has expired. An opportunity to amend is unwarranted.

## V.    MOTION FOR SANCTIONS

Defendant also seeks sanctions against Plaintiffs under the Court's inherent power. (doc. 12 at 6-7.) It contends that Plaintiffs' extensive litigation history concerning the ownership and possession of the Property warrants a finding of bad faith and sanctions in the form of filing restrictions. (*Id.*)

Courts possess the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *Id.* "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292-93 (5th Cir. 1997) (citations omitted). Nevertheless, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). "[T]he threshold for the use of inherent power sanctions is high." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995). A court's inherent power is not "a broad reservoir of power, ready at the imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *aff'd sub nom. Chambers*, 501 U.S. at 32.

Before imposing sanctions against a party under its inherent power, the court must make a specific finding that the party acted in bad faith. *In re Moore*, 739 F.3d 724, 729-30 (5th Cir. 2014) (citing *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997) (citation omitted)). Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *Turfgrass Grp., Inc. v. Ne. Louisiana Turf Farms, LLC*, No. CIV.A. 10-1354, 2013 WL 6145294, at *3 (W.D. La. Nov. 20, 2013) (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999)). Bad faith conduct includes conduct that is motivated by improper purposes such as harassment or delay. *See Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir. 1988). The court's finding of bad faith "must be supported

by clear and convincing proof," which is a "high standard" that requires "more than a preponderance of the evidence." *See Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001) (citing *In re: Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)). The evidence supporting a finding of bad faith "must be so direct and weighty as to leave the factfinder with a firm belief in the truth of the facts of the case." *See id.*

Since at least 2008, Plaintiffs have engaged in litigation concerning the Property. In the 2008 Bankruptcy, the court noted that they had filed ten bankruptcies since 1989, and that they alternated filing separate bankruptcies "to the detriment of their creditors." (*See* 2008 Bankruptcy, doc. 45 at 3.) Throughout multiple lawsuits, they repeatedly asserted claims based on the same allegations which were initially found to lack merit, and later dismissed as barred by res judicata. Their litigation history clearly demonstrates that they have been knowingly and consciously abusing the judicial process by filing frivolous lawsuits to delay foreclosure and eviction proceedings. It culminated in an express warning in the 2019 Lawsuit that "future litigation asserting claims centered on the Property – whether filed in this Court, filed in state court and removed to this Court, or filed in another federal court and transferred to this Court – could subject them to sanctions, including the Court imposing monetary sanctions and/or precluding them from making further filings without leave of Court." (*See* 2019 Lawsuit, doc. 12.) Despite that warning, they have filed yet another lawsuit asserting the same claims that have been dismissed as meritless and barred by res judicata. In light of Plaintiffs' extensive history of abusive litigation practices, and the fact that they were expressly warned that filing additional claims concerning the Property would subject them to sanctions, this case is sufficient to meet the high burden of clear and convincing evidence required to support a finding that it was brought in bad faith for purposes of harassment. *See Garrett v. United States*, No. 3:19-CV-1310-M-BH, 2019 WL 6533099, at *5

(N.D. Tex. Nov. 16, 2019) (finding sanctions appropriate under clear and convincing evidence that a *pro se* plaintiff brought the case "in bad faith for purposes of harassment" based on a history of "attempt[ing] to re-litigate [] claims . . . in light of multiple warnings."); *Bryant v. Plains Nat'l Bank of Lubbock, Tex.*, No. 5:05-CV-034-J, 2005 WL 1704946, at *3 (N.D. Tex. July 19, 2005) ("Repeatedly suing the same parties over and over, asserting the same factual claims and legal causes of action, after and in spite of the entry of multiple adverse final judgments . . . is harassment and a gross abuse of the judicial process."); *Taylor v. Boyle*, No. Civ. A. 3:01-CV-1498-L, 2001 WL 1114137, at *2 (N.D. Tex. Sept. 6, 2001) (finding that "harassing and vexatious conduct" included threats to continue abuse litigation tactics).

When, as here, a litigant abuses the judicial process by filing multiple frivolous actions concerning the same subject, monetary sanctions and a prohibition "against the filing of future . . . suits without the prior consent of a district or magistrate judge" are appropriate sanctions. *Murphy v. Collins*, 26 F.3d 541, 544 (5th Cir. 1994); *see Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 954 (5th Cir. 2001) (explaining that courts may issue an order prohibiting the filing of further lawsuits without obtaining leave of court as a sanction within its inherent power). The Court should therefore bar Plaintiffs from filing any lawsuits, in state or in federal court, concerning the Property without first obtaining leave of court.[7]

## VI. RECOMMENDATION

Plaintiffs' motion to dismiss should be **DENIED,** and Defendant's motion to dismiss and for sanctions should be **GRANTED**. Plaintiffs' claims based on violations of the CARES Act and Emergency Order 24 should be **DISMISSED with prejudice** for failure to state a claim, and their

---

[7] A magistrate judge's report and recommendation that describes sanctionable conduct provides sufficient notice to a plaintiff prior to imposition of sanctions. *See Bruing v. Clark*, 560 F.3d 292, 298 (5th Cir. 2009).

remaining claims should be **DISMISSED with prejudice** as barred by res judicata.  Plaintiffs

should be **SANCTIONED** and **BARRED** from filing any case in this district concerning the

Property unless: (a) they pay the full filing fee; and (b) are represented by a licensed attorney

admitted to practice in this Court, or they first obtain permission from a district judge or magistrate

judge in this district to proceed *pro se*.  To obtain permission to proceed *pro se*, they must:

1. File a motion with the clerk of this Court requesting leave to file a *pro se* action;

2. Include in the motion the following information:

> a. A list of all lawsuits currently pending or filed previously with this Court, including the name and number of each case, and the current status or disposition of the lawsuit; and

> b. A list of all outstanding injunctions or orders limiting their access to federal court, including orders and injunctions requiring them to seek leave to file matters *pro se* or requiring them to be represented by an attorney, including the name and case number of all such orders or injunctions; and

3. File with the clerk a notarized affidavit, in proper legal form, which recites the issues they seek to present, including a short discussion of the legal basis of the claim asserted, and describing with particularity the facts giving rise to said claims. The affidavit also must certify, to the best of their knowledge, that the legal arguments being raised are not frivolous or made in bad faith, that they are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, that the lawsuit is not interposed for any improper purpose, and that they will comply with all local rules of this Court.

**SO RECOMMENDED** on this 19th day of April, 2021.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

28

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE